SWAN *et al. v.* FIVE HUNDRED AND FIFTY TONS RESERVE COAL.

*(District Court S. D. New York.* May 25, 1888.

SHIPPING—CARRIAGE OF GOODS—DEMURRAGE—COAL.

Claimant chartered libelant's schooner to take "a cargo of coal" from Sydney, Cape Breton, to New York, the vessel "to load in turn, subject to the regulations of the mines, * * * and every unavoidable hinderance that may prevent the loading * * * excepted." The charterer intended to take a cargo of "culm" coal, but this intention was not communicated to libelant. The vessel began loading on the 12th of August, was interrupted for three days by preference given a steamer, under the regulations of the mines, and completed her loading on the 25th. Five days were sufficient to load the vessel. The reason of the delay was the absence of other vessels to take "round" coal, both round and. culm coal being sent together from the mines, and mining being suspended when vessels were not present to take round coal, *Held,* that under the general charter for "a cargo of coal," charterers were not entitled to subject the ship to the delays incident to loading a special kind of selected coal; that under the special exception in the charter, demurrage could not be allowed for the three days, waiting the steamer; but for the remainder of the delay, viz., five days, the vessel was entitled to demurrage.

In Admiralty.
*Wing, Shoady & Putnam,* for libelants.
*Hyland & Zabriskie,* for claimant.

BROWN, J. On the 15th of July, 1887, the libelants chartered to the claimant the schooner Osseo, to take "a cargo of coal" from Sydney, Cape Breton, to New York; the vessel "to load in turn, subject to the regulations of the mine, * * * and every unavoidable hinderance that may prevent the loading * * * excepted." The vessel arrived at Cape Breton, and reported on the 11th of August; began loading on the 12th; was interrupted for three days by the preference given to a steamer under the regulations of the mines; and completed her loading of 550 tons on the 25th. The libelants claim that five days was a sufficient time for loading, and that they are entitled to demurrage for the rest of the time during which the vessel was detained. The circumstances and customs of the mines at Sydney are stated in the case of *Eleven Hundred Tons of Coal,* 12 Fed. Rep. 185, to which reference has been made; and the proof was similar on the present trial. But the charter in this case was not, as in that, for a "cargo of culm coal," the loading of which is subject to special delays, but was for a "cargo of coal" generally; and ordinarily a cargo of "round" coal will be loaded in half the time taken for culm coal. The libelants testified that they did not know that the charterers intended to take culm coal only. The respondent's evidence does not show that that was stated in the negotiations for the charter. But the evidence shows that for some months, at least, before this charter was executed, round coal had ceased to be imported on account of the high duty upon it, and that the charterers at

---

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

this time were importing culm coal only. These facts, however, were not known to the libelants. In the case before cited it appears that vessels loading with culm were loaded at the rate of 150 tons a day. A witness called for the respondents, in the present case, who had often been at the mines, but does not appear to have worked them, stated that 40 to 50 tons a day was a fair average for loading culm coal; the reason being that the various kinds of coal were all sent down from the mines together by cars, a distance of some 10 miles; and as only a small portion of the whole was culm, it could not be loaded faster than received. When vessels were not present to take the other coal, mining was suspended. The testimony also shows that the reason for the delay in this case was the absence of other vessels to take the round coal that came down from the mines with the culm. There is no doubt that the charterers intended to take a cargo of culm coal only. It is equally certain that this was not stated to the respondent; that he had no knowledge of it, and was not chargeable with knowledge of it. Upon a general charter for a "cargo of coal," without more, the charterers were not entitled to subject the ship to the long delays incident to loading a special kind of selected coal. To do that the charter should have provided for that kind of coal; otherwise only the usual time for loading the ordinary run of coal can be deemed within the contract, except in so far as this time might be extended by the special exception named; that is, waiting for her turn "subject to the regulations of the mine, and every unavoidable hinderance that may prevent the loading." Under these exceptions three days' waiting for the steamer are proved. There was no further hinderance in loading the ordinary run of cargoes. The libelants admit five days to be a sufficient time for loading; and the testimony of other witnesses shows that that would be in fact more than sufficient for loading the ordinary run of coal. Deducting eight days, there remain five, for which I must hold the claimants liable, at the agreed rate of $40 a day. Decree for $200, with costs.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.